GRENNON v. N. O. PUB. SERVICE, INC.

———

(March 4, 1929. Opinion and Decree.)
(April 15, 1929. Rehearing Refused.)

———

Milner and Porteous, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge and B. W. Kernan, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. This is a most unusual case. Plaintiff's left foot was cut off by a street car of defendant company on the night of December 15, 1925, but neither plaintiff, nor any of defendant's witnesses, nor, in fact, anyone else knows anything about how the accident happened.

After the accident plaintiff was found in a dazed condition with his foot crushed practically to a pulp, not on the uptown track on which the accident must have taken place, but on the downtown track. He was found not by the crew of the car that injured him, but by the crew of another car, the motorman of which saw him in a semi-reclining position ahead of his car.

How he got on the track, and how the accident happened will probably never be known.

Plaintiff's counsel attacks defendant as a "soulless corporation" and denounces what is termed as defendant's change of front between the first and second trials. This case was tried twice before a jury and is now before us on appeal from a verdict and judgment for $13,500 rendered in favor of plaintiff by the second jury.

We can readily understand the position in which defendant found itself when called on to defend a suit growing out of an accident about which it had no information whatever.

It knew that a man had been hurt—in all probability by one of its cars—but that was the full extent of its knowledge. It did its full duty when, in its first answer it admitted that a man who gave his name as Grennon had been found injured near its tracks. More it could not admit because more it did not know. At the first trial much information came to light, and in view of this new information defendant was justified in filing an amended answer, and in admitting in that answer what it then knew but had previously been ignorant of, and in suggesting that even under the facts then in its possession no legal liability existed. Our many years of personal acquaintance with the late Mr. B. W. Kernan, who was then counsel for defendant, and our extremely high opinion of him as a lawyer and as a man, convinces us beyond the shadow of a doubt that the position taken by him on behalf of defendant was entirely and in all respects legal, ethical and justified by the circumstances.

Plaintiff claims that he was not in the least under the influence of liquor when, at about midnight, he arrived at the corner of Claiborne Avenue and Josephine Street for the purpose of boarding an uptown bound street car of the Claiborne line of defendant.

On account of the close proximity of the track to the Claiborne Canal and because there was no level ground on which prospective passengers could stand between the track and the canal, defendant had erected a small, narrow platform overhanging the edge of the canal and protected, on all sides, except that facing the tracks, by a wooden rail. This platform was 59 feet 8 inches in length and 6 feet 4 inches in width from the nearest street car rail to the rear edge. It was level with the rails. From the outside edge of an open street car door to the rear edge of this platform there was a distance of 3 feet 11 inches.

Plaintiff claims that after waiting a few moments on this platform he signalled an approaching car, but that it did not stop for him, and that just after its front end had passed him, one of the doors opened and hit him and that this knocked him under the car, with the disastrous result set forth.

If we felt that the facts were as plaintiff sets them forth, we would be bound to dismiss this suit on account of his own contributory negligence, because the evidence shows that the door extends beyond the side of the car only 10 inches, and for a prospective passenger to stand that near to a car is negligence. In Murphy vs. N. O. Public Service, Inc., 7 La. App. 612, plaintiff claimed:

"that the car had nearly passed her when the rear doors were suddenly thrown open without any notice to plaintiff."

There was some dispute as to whether the plaintiff in that case was struck by the door or by some other part of the car, but the court holding that in either event, the cause was the negligence of plaintiff in standing too close to the car, and that, therefore, the defendant was not liable, said:

"On the other hand seven witnesses testify that it was the front part of the car that struck the plaintiff, but it is immaterial, under the circumstances of this case, what part of the car struck her. It has been the jurisprudence of this State since Lesseps v. Pontchartrain R. R. Co., 17 La. 361 (1841), reported in Hennen Digest, 1054, that 'a party can recover no damages for an injury to which he has himself contributed. Volenti non fit injuria,' unless the defendant by due diligence could have avoided the accident."

Plaintiff's story does not impress us. If he was in the full possession of his faculties, his recollection of the details of his accident would be much clearer than it seems to be. His recital of his story is so parrot-like and is couched in such technical language as to leave us convinced that his testimony is the result rather of an accurate memorizing of the allegations of his petition, than of a clear recollection of the actual events. Then, too, the circumstances leading up to the unfortunate accident, the facts that plaintiff had spent several hours in a so-called soft drink establishment, that he had been paid off that day, that he had won a small amount on the races, convince us that plaintiff had imbibed freely of intoxicants and was, at the time of the catastrophe, oblivious of his surroundings and no longer had it within his power to exercise discretion. In this respect the testimony of several of the witnesses is corroborative, and the hospital report is quite significant. This report describes plaintiff as being "in an alcoholic state."

Objection was raised to the admissibility of this report in evidence, because there was some question as to whether the doctor who testified verbally was the one who made the report. Whether it was properly admitted or not is immaterial, as, even without the illumination cast by it, we would be of the opinion that plain-

644

tiff was to say the least "in an alcoholic condition."

In fact, it is this alcoholic condition which, in our judgment, entitles plaintiff to recover. If he had been in the possession of his faculties, he was manifestly guilty of contributory negligence in being hit by the car at all. If he was sober, as he says he was, and was hit by the open door of the car, his case is on all fours with the Murphy case and it should be dismissed.

If, prior to the accident, plaintiff had not been seen by any of defendant's employees in a position of danger, and in a condition and attitude indicating helplessness, or if we could feel that his position was such that there was no duty in any of those employees to have seen him, then we would be forced to hold defendant free from fault..

However, according to Smith, one of defendant's conductors, and according to Pfefferle, a witness for defendant—and in passing we will remark that we find some remarkable inconsistencies in Pfefferle's testimony—plaintiff was seen fifteen minutes or so before the accident on this platform, within four or five feet of the rails, in an intoxicated condition and slouched down into a crouching position. The drunker he was, the more dangerous his position, and the greater the duty on defendant's employees to remove him to a place of safety. There he was, penned in by the rails of the platform in a helpless condition. Smith and Pfefferle remarked on his condition and then proceeded on their way, leaving him to his fate. A very interesting case; to our minds, very much in point here, is Kramer vs. N. O., City Lake & R. R. Co., 51 La. Ann. 1690, 26 So. 411. In the Kramer case plaintiff, while drunk, fell alongside

the rails of the defendant company. He was partially hidden by grass, but:
"he was seen by the motorman of a passing car a short time before the accident, 'asleep 4 feet from the track facing towards the Bayou St. John, his legs toward the track.'"

The crew of the car which saw Kramer did not stop, realizing that they were only three blocks from the barn, at which their run terminated, but, immediately on arriving at the barn, notified the foreman, who sent back to have the apparently helpless person removed before injury could befall him, but in the few intervening moments another car had passed and Kramer, having thrown one of his legs over the rail, was hurt.

It was argued that the defendant, on discovering the dangerous position of Kramer, should have done more, but the court held that the defendant company had complied with its duty in sending back within so short a time to investigate the situation and to remove Kramer from danger. On the question of the duty imposed upon the defendant company under these circumstances, the court in the Kramer case said:

"It is charged that defendant is liable, because when the foreman was apprised by the motorman of the car that passed the plaintiff, that he was lying asleep in dangerous proximity to the track, it is claimed the foreman did not take the precautions required to secure the plaintiff from danger. Passing over the question as to the duty or character of the diligence imposed on defendant by the communication of plaintiff's danger to their foreman, we can find no basis for the conclusion that the foreman did less than humanity suggested, or was required of him, by any test we can apply. His testimony is, that he at once instructed one of the conductors within his call, to proceed, but before the mission could be executed, the accident occurred. It is true the conductor to whom it is claimed the order was

given, testifies he was sent on some other business. Assuming he was the same conductor to whom the foreman spoke, we have against any force of the conductor's testimony, that of the foreman, confirmed by that of the conductor who communicated the plaintiff's danger, that the communication was at once acted on by the foreman, and that the conductor charged to remove plaintiff from the position of danger at once, proceeded on his mission, but before he got a few feet away, the alarm came that the plaintiff had been run over, verified as soon as the foreman and conductor, with others, reached the scene of the accident. With the closest scrutiny and consideration of the testimony on this part of the case, we can perceive no basis to charge the company with liability for the injuries to which the plaintiff exposed himself."

While the defendant in the Kramer case was held not liable, an application of the reasoning of that case makes it imperative, to our mind, in the instant case to hold that that defendant here did not discharge its full duty after discovering the dangerous position of plaintiff. In the instant case the plaintiff was on the platform erected for passengers by defendant. He could have been there for no other reason than to board a car. He could not get off the platform except by boarding a car or by crossing defendant's track. Furthermore, in the Kramer case the plaintiff was lying between two streets and the operators of the car passed and discovered him while they were in motion, and at the same time realized that the barn was only three squares away, whereas in the instant case the car had stopped alongside of plaintiff and the crew not only did nothing at the time, but did not report it to anyone else, as the crew in the Kramer case did.

However great may have been the negligence of Grennon in getting drunk and in going into a place which, in his con-

dition, was dangerous, this negligence, as soon as he lost possession of his faculties, became passive and no longer functioned as the proximate cause of the subsequent accident, which proximate cause we believe was the negligence of Smith, the conductor who failed to take precautions for plaintiff's safety. After Grennon, due to his condition, no longer had it within his power to guard himself against danger, Smith, by the exercise of ordinary care and common humanity, could have saved him. In Blackburn vs. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708, the court said:

"As indicated heretofore, the active phases of his gross negligence were spent, and he was in such a position of apparent helplessness as to have been seen and his condition appreciated, had the proper precautions been observed."

It will be remembered that in the instant case, not only was Grennon seen, but his condition was appreciated.

For these reasons we are of the opinion that the proximate cause of Grennon's unfortunate accident was the negligence of the defendant company.

We feel, however, that the award of the jury and the judgment based thereon is not in line with the amounts sanctioned by the jurisprudence of this State. We have carefully gone over various cases involving similar injuries and believe that full justice will be done by allowing plaintiff the sum of $7,500.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount thereof to $7,500, and as thus amended, affirmed, the costs of appeal to be paid by appellee.