151 So.2d 116 (1963)
Henry ACCARDO
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY.
No. 5763.
Court of Appeal of Louisiana, First Circuit.
February 22, 1963.
Rehearing Denied March 29, 1963.
Certiorari Refused May 7, 1963.
*117 Brumfield, Turner & Cooper by H. Alva Brumfield and Sylvia Roberts, Edward V. Fetzer, Baton Rouge, for appellant.
Watson, Blanche, Wilson, Posner & Thibaut, by David W. Robinson, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
This is an action in tort wherein plaintiff, Henry Accardo, seeks recovery for personal injuries and attendant medical expense sustained and incurred as the result of an automobile accident in which plaintiff, a pedestrian, was struck by a 1959 Volkswagen owned and operated by Elton E. Dixon, the insured of defendant, Grain Dealers Mutual Insurance Company. The trial court, without assigning reasons for its judgment, rejected plaintiff's demands and plaintiff has appealed.
The accident giving rise to the present litigation occurred at approximately 7:30 A.M., April 13, 1961, in the 3100 block of Government Street, a paved four lane thoroughfare in the City of Baton Rouge. The record reflects that Government Street runs in an easterly-westerly direction and is devoid of a neutral ground, eastbound and westbound traffic thereon being separated by a white median line flanked by yellow lines adjacent and parallel thereto on each side thereof. It also appears that each of the four traffic lanes of Government Street is 11 feet in width.
Plaintiff was attempting to cross Government Street from the north side thereof to the south side in the approximate center of the 3100 block, which point is not a regular pedestrian crossing. Upon reaching the approximate center of the street, plaintiff, for some reason not disclosed by the evidence, became either frightened or confused, suddenly and abruptly turned and dashed back toward the north curb from whence he started, and was struck by Dixon's westbound vehicle which was traveling *118 in the right or outside westbound traffic lane.
Plaintiff alleges that the sole and proximate cause of the accident was Dixon's negligence in failing to keep a proper lookout, failing to have his vehicle under control, operating his automobile at an excessive rate of speed and failing to avail himself of the last clear chance to avoid the accident.
Conversely, defendant maintains its said insured was free of negligence and that the accident resulted solely from plaintiff's negligence in attempting to cross a busy thoroughfare at a point other than a regularly designated pedestrian crossing; failing to keep a proper lookout for his own safety; leaving a place of safety and suddenly dashing into the path of an oncoming vehicle; and attempting to cross a public street without first ascertaining that he could do so safely. Alternatively, defendant pleads the contributory negligence of plaintiff in the aforesaid respects.
An unusual aspect of the instant case is the remarkable accord in the testimony of the witnesses who testified concerning its occurrence. From the testimony, which is in substantial agreement in all significant respects, the court is able to accurately and vividly reconstruct its happening.
Plaintiff, a barber 66 years old at the time of the accident, operated a tonsorial parlor at 3153 Government Street, which address is on the North side of said thoroughfare. On the South side of Government Street at the 3100 block is situated a shopping center containing a grocery store and parking lot in which lot plaintiff customarily parked his automobile. On the morning in question plaintiff went to his establishment early as usual to turn on the latherizer (a mechanical device which produces lather for shaving) so that he would have lather available upon opening his shop at 8:30 A.M. After performing this task, he left the shop and upon going outside observed what he termed a "commotion" about water leaking from one of the establishments in the building. Included in the small group which had gathered on the sidewalk were a Miss Martinez (one of plaintiff's lessors) and also a policeman who had been summoned to investigate the leak which was causing water to flow from the building onto the sidewalk and street.
Plaintiff, intending to go first to the grocery store situated across the street and then to his home, started from the north curb and proceeded toward the south, side of Government Street after first looking both to the east and west and observing that no traffic was approaching from either direction. Plaintiff recalled only that he had proceeded to a point within the left or inside westbound lane when he heard, tires squealing. He recalled nothing thereafter until he regained consciousness in the hospital to which he was taken following the accident. Plaintiff did not remember seeing any car at any time. He did not see Dixon's Volkswagen and did not hear the sounding of an automobile horn.
Defendant's insured, Dixon, testified that on the morning of the accident he was driving his Volkswagen westerly along Government Street in the right or outside westbound lane traveling at a speed of 30-35 miles per hour. When approximately 300 feet distant he observed Mr. Accardo standing on the north curb to the east or rear of a motorcycle policeman whose vehicle was parked partially upon the curb. According to Dixon, plaintiff proceeded to walk across the street until he reached the median stripe. Observing that plaintiff was in no position of danger, Dixon proceeded westerly in the outside lane without reducing his speed. When his automobile reached a point which Dixon estimated to be approximately 100-150 feet distant from plaintiff, Mr. Accardo suddenly turned sharply and dashed toward the north curb from whence he had started. Immediately upon observing plaintiff's sudden turn and reversal of direction, Dixon applied his brakes as forcefully as he could. Plaintiff was then still in the left *119 or inside westbound lane but continued to run directly into the path of Dixon's vehicle. It is undisputed that the front of the Volkswagen struck plaintiff, the impact occurring at a point approximately six feet south of the north curb of Government Street and approximately 16 feet north of the median line separating the east and west bound lanes of travel.
In his deposition taken prior to trial of the case, Dixon stated that when plaintiff turned and ran back toward the north curb, Dixon was then only approximately 25 feet distant. In so stating, Dixon obviously committed an honest error considering the evidence reveals clearly that Dixon's vehicle left skid marks 30 feet in length prior to the point of impact. In this connection, it further appears that the Volkswagen continued 10 feet beyond the point of impact before being brought to a halt. Mr. Dixon readily admitted he was familiar with the area and knew that pedestrians frequently cross Government Street in the center of this particular block. However, Dixon also testified that when he first observed plaintiff start across the street there was nothing to indicate that plaintiff would suddenly wheel around and retrace his steps on the run. In addition, Dixon stated that he observed nothing that would keep plaintiff from safely completing his intended crossing of the street. He also testified that upon noting plaintiff's sudden maneuver, he did not blow his horn but immediately applied his brakes.
Sergeant Lionel D. Kelleher, an employee of the Baton Rouge Police Department for eight years, testified that on the morning in question he was stopped at the 3100 block of Government Street by some businessmen and requested to assist in solving the problem created by water which was flowing out of one of the buildings and threatening to flood neighboring business establishments. He parked his motorcycle on an area between the curb and the sidewalk on the north side of the street and was standing to the rear of his machine facing the south side of Government Street. Plaintiff came from behind and to Kelleher's right and commenced crossing the street. When plaintiff had proceded almost to the dividing center line of Government Street, Kelleher heard a horn blow and also heard the noise made by the sudden and forceful application of an automobile's brakes. Kelleher then observed plaintiff reverse his direction of travel and run back toward the north curb of the street. Sergeant Kelleher was the only witness who heard a horn blow. When Kelleher heard the horn blow and the brakes of the Volkswagen commence squealing, he immediately looked up and to the left and saw Dixon's automobile approximately 30 feet distant from plaintiff and traveling in the right or outside westbound lane. He testified further that plaintiff was struck in the outside lane by the Volkswagen which came to rest approximately 10 feet beyond the point of impact. According to Kelleher, the right side of Dixon's vehicle was five or six feet south of the curb at the point of impact but photographs introduced in evidence, depicting the scene of the accident, including the skid marks and the still unmoved vehicle, clearly and unmistakably reveal that the tire marking made by the right wheels of the Volkswagen could not possibly be more than 3 feet south of the curb. In addition, Kelleher testified that at the moment of impact the Volkswagen was traveling in the outside lane in a straight line but that after the impact the vehicle angled slightly to the right or north. Of considerable significance is Kelleher's testimony to the effect that there was nothing to indicate that the Volkswagen was traveling at an excessive rate of speed.
Mr. William Harry Perkins, an acquaintance of plaintiff, owner and operator of Perkins' Conoco Service Station situated at 3103 Government Street, testifying on behalf of plaintiff, stated that at the time of the accident, he was standing in the driveway of his service station approximately 150-200 feet east of the point of impact. He observed plaintiff stop and *120 speak with the policeman following which plaintiff then walked toward the center of the street. When plaintiff reached the center of the street, plaintiff observed a vehicle approaching from the west in the inside eastbound lane. Plaintiff then looked to the east and saw the Volkswagen approaching from that direction. According to Perkins, plaintiff then turned and began running back toward the north curb. When Perkins first observed the Volkswagen it was approximately 100 feet from Accardo, who, at that time, was standing on or near the center stripe. Perkins testified that Dixon was traveling in the inside westbound lane and in apparent effort to avoid plaintiff, veered into the north lane and followed plaintiff to the point of impact. In this latter regard, Perkins' testimony is contrary to that of Dixon who stated that he was traveling in the outside lane. We also note that it does not accord with the physical evidence to the effect that the tire marks left by Dixon's vehicle were entirely within the outside lane and were straight and parallel with the street. Perkins fixed the point of impact at approximately five or six feet from the north curb. In addition Perkins stated that upon observing the events leading up to the impact he stated to a nearby employee, "that car is going to hit Henry."
Ronald J. Brouilette, an employee of the Baton Rouge Police Department with four years experience in accident investigation, stated he was called to the scene of the accident and arrived there with a fellow officer, Tom Larsen. Upon Brouilette's arrival, Mr. Accardo and the Volkswagen were still at the scene. His investigation revealed that the Volkswagen left skid marks on the pavement which measured an overall length of 40 feet30 feet prior to impact and 10 feet thereafter. The skid marks were entirely in the outside lane and in a straight line. Predicated upon slight debris noted at the scene, he fixed the point of impact six feet south of the north curb of the street and 16 feet north of the median line. He also observed some damage to the right front of the Volkswagen commencing at the center.
Our careful consideration of the record reveals an absolute lack of any testimony whatsoever tending to establish that Dixon was traveling at an excessive rate of speed. On the contrary, the evidence clearly preponderates in favor of the conclusion that he was driving at a safe and lawful speed at the time of the accident.
We believe the following conclusions to be fully supported by the evidence of record in this case: When Dixon was approximately 300 feet away he observed plaintiff begin to cross the street. At this time there was absolutely nothing to suggest that plaintiff could not complete his intended crossing in safety. There was no reason for Dixon to reduce his speed because plaintiff not only crossed Dixon's lane of travel but was in the inside lane in a place of safety while Dixon was yet approximately 100 feet distant. It was not until plaintiff suddenly and unexpectedly turned and bolted into the path of Dixon's automobile that an emergency presented itself. Had plaintiff remained in the inside lane, the accident would not have occurred. Dixon was presented with the picture of a full grown, mature individual, apparently in full possession of his faculties, standing in a position of safety and had no reason to expect or anticipate that such a person would suddenly dart from a place of safety into the path of an oncoming vehicle which was clearly to be seen upon the exercise of even the slightest observation.
Under the circumstances shown the negligence of plaintiff is manifest and patent. It was negligence of the grossest sort for plaintiff to suddenly turn, reverse his direction and dash toward the curb without looking to the east to observe if the street were clear of oncoming westbound vehicles.
In his argument before this court learned counsel for appellant virtually conceded that plaintiff's only hope of recovery *121 herein is under the doctrine of last clear chance. This plea, of course, concedes plaintiff's negligence and unless it be shown that the plea of last clear chance is tenable under the established facts of the case, plaintiff may not avoid the consequences of his admitted negligence. Dean v. Pitts, La.App., 133 So.2d 917.
Esteemed counsel for appellant has cited numerous automobile-pedestrian accident cases in which the doctrine of last clear chance has been invoked against the motorist. We have carefully examined each of the cited authorities and find none controlling with regard to the case at bar. We find in the cited cases circumstances which distinguish them from the case at bar. For example, Winn v. Yellow Cab Company of Shreveport, La.App., 96 So.2d 365, involved an instance in which a pedestrian was struck by a taxicab which had, without slowing down or taking precautions to observe vehicular or pedestrian traffic, passed around a trolley car which had come to a stop to discharge and take on passengers. Baquie v. Meraux, 11 La.App. 368, 123 So. 338, concerned a case in which a motorist approached a group of persons walking along the highway in front of his car. In Guillory v. Lemoine, La.App., 87 So.2d 798, a motorist struck a 9 year old child crossing a street.
It is the settled jurisprudence of this state that for the doctrine of last clear chance to apply, plaintiff bears the burden of establishing the following factors by a clear preponderance of evidence, namely: (1) that plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that defendant was in a position to discover plaintiff's peril; and (3) that when defendant discovered plaintiff's peril he had reasonable opportunity to avoid the accident. McCallum v. Adkerson, La.App., 126 So.2d 835; Whitner v. Scott, La.App., 116 So.2d 180.
The instant case is practically on all fours with that of Newton v. Pacillo, La. App., 111 So.2d 895, which involved a pedestrian struck by an automobile after having proceeded to the middle of a street and then turning and reversing his direction to return to the curb from whence he first started. In holding that the motorist therein did not have the last clear chance to avoid the accident, the appellate court made the following observations which we find peculiarly applicable to the case at bar:
"Nor can it be concluded plaintiff has established the presence or existence of the three aforesaid essential elements prerequisite to the application of the doctrine. As to the first of these elements, it is contended that Mrs. Pacillo saw plaintiff and his companion in the street when she was at a distance of 300 feet away. Even so, the evidence does not establish that plaintiff was then in a position of peril. Quite to the contrary, so far as defendant's car was concerned, plaintiff was in a position of safety, at least 10 feet from defendant's lane of travel. The situation as to plaintiff's safety only changed when he, suddenly and without warning, darted in front of defendant's car in order to avoid the splashing of water from a westbound vehicle approaching on the north side of the street. It was then, and only then, that plaintiff placed himself in a position of peril. Nor is plaintiff's position as to the second and third elements tenable. It was not possible for Mrs. Pacillo to have observed plaintiff's perilous position sooner than she did. Her discovery was simultaneous with plaintiff's act in placing himself in such position. At that time she had neither time, distance nor opportunity to do anything effective to avoid the accident."
From the record before us we are convinced that Dixon was free of negligence and, under the circumstances shown, he did not have the last clear chance to *122 avoid the accident. It is clear beyond doubt that plaintiff was in no peril whatsoever until he suddenly turned and bolted toward the curb at a time when Dixon's oncoming automobile was approximately 100 feet distant. It is equally clear that Dixon immediately discovered the peril created by plaintiff's sudden, irrational conduct and instantly applied his brakes as hard as he could. In so doing, he reacted as a reasonably prudent individual but nevertheless could not avoid the accident because he had no opportunity to do so.
We conclude that the sole proximate cause of the accident was the negligence of plaintiff in the respects hereinbefore set forth. We further conclude that Dixon was free of negligence and that he did not have the last clear chance to avoid striking plaintiff.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed.
Affirmed.