158 So.2d 379 (1963)
Josephine B. GREGOIRE
v.
OHIO CASUALTY INSURANCE CO. et al.
No. 5958.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
Rehearing Denied December 16, 1963.
Writ Refused February 24, 1964.
Cronvich, Ciaccio, Wambsgams & Perry, by Philip C. Ciaccio, New Orleans, for appellant.
*380 Borron, Owen, Borron & Delahaye, by G. T. Owen, Jr., Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET and LANDRY, JJ.
LANDRY, Judge.
Plaintiff, Mrs. Josephine B. Gregoire, instituted this action in tort to recover damages for the alleged wrongful death of her husband, Joseph Long Gregoire, who died as the result of injuries received when he was run over and struck, while lying prostrate on a public highway in an intoxicated condition, at approximately three o'clock in the morning, by a pick-up truck owned by Ariel Joseph Fontenot and being driven at the time of the accident by Fontenot's minor son, Allen Dale Fontenot. Ohio Casualty Insurance Company, liability insurer of the vehicle involved, was named party defendant herein together with the aforesaid owner and driver of the insured vehicle. After trial on the merits in the court below, the learned trial judge, without assigning written reasons for his decision, rendered judgment rejecting and dismissing plaintiff's demand and from said unfavorable determination plaintiff has taken this appeal.
The pleadings, testimony and alleged error urged by plaintiff-appellant on this appeal present for our determination two issues, namely (1) whether defendant driver ran over the prone body of decedent while decedent was yet alive so as to cause the injuries which resulted in decedent's death and (2) whether defendant driver had the last clear chance to avoid the accident. In regard to the second issue posed it is of utmost significance to note the negligence of decedent is readily acknowledged by learned counsel for appellant who frankly concedes plaintiff's right of recovery is predicated entirely upon the doctrine of last clear chance.
The facts attending the present case are undisputed. At approximately eleven o'clock on the night of May 7-8, 1960, decedent, Joseph Long Gregoire, went to a bar and lounge known as Club Forest situated in Whitehall, Livingston Parish, Louisiana. It is conceded decedent arrived in a drunken condition, remained in the establishment for approximately two hours during which interval he slept about an hour and a half. Upon awakening, decedent remained an additional estimated one-half hour during which he consumed two beers and according to the proprietor, "left in a little better shape than when he came in".
Defendant, Allen Dale Fontenot (20 years of age), driving a 1956 Chevrolet pick-up truck owned by his father, arrived at Club Forest at approximately 2:00 A.M., after having returned his date to her home subsequent to their attending a movie in Hammond, Louisiana. After consuming two beers, young Fontenot departed with friends he encountered in the establishment and, after returning his acquaintances to their respective homes, drove to Leader Road, a community gravel road, on which was situated the home of his father with whom he was living at the time. Upon turning from the main highway onto Leader Road, a graveled highway approximately 21 feet in width with one foot shoulders on either side, Fontenot proceeded southerly at a speed estimated at between 35 and 40 miles per hour with the truck lights dimmed. At this juncture we deem it advisable to point out the lack of accurate evidence regarding distances, time and speed considering the record reflects Fontenot's memory and ability to make reasonably correct estimates is rather poorno doubt resulting from the emotional shock he experienced immediately following the accident as will hereinafter appear.
At a point which he first estimated to be two-tenths of a mile from the main highway and on later reflection considered to be approximately one block from the highway and approximately two or three blocks from the home of decedent's parents, Fontenot ran over Gregoire's body (living or dead) lying prostrate on the highway clad in *381 faded khaki trousers and a maroon shirt or jacket.
Defendant was unsure regarding the distance he was from Gregoire when he first observed decedent lying on the highway, but in essence Fontenot testified he noted an object in the road when about thirty feet away at which time he could not determine its nature. He was then too close to swerve or "cut over" but he did apply his brakes and come to a stop at a point estimated at from 10 to 15 feet beyond Gregoire's body. He did not realize he had run over a human being until the moment of impact.
Gregoire had been lying on the left or eastern half of the road with his head towards the center and his feet toward the left shoulder. The left front wheel of defendant's truck apparently ran over his body and the left front leaf spring of the undercarriage of the vehicle struck him. After stopping his vehicle, Fontenot went back to investigate, recognized Gregoire whom he knew and from Gregoire's appearance thought him to be dead. Fontenot immediately went to summon his father and together they returned to the scene of the accident where the elder Fontenot remained while the son went to the nearby Club Forest to use the telephone to summon an ambulance. After the departure of his son, Mr. Fontenot examined Gregoire by feeling his pulse and chest and from such examination believed Gregoire was dead which conclusion was confirmed by the ambulance attendant when he arrived at the scene.
Called as a witness on behalf of plaintiff-appellant, Andrew Kusch, State Trooper, who investigated the accident within a few hours following its occurrence, testified he found one knee of Gregoire's khaki trousers shredded and torn and also found evidence from which he deduced the body had been "ground" into the gravel surface of the highway at a spot approximately 20 feet north of the point where the body lay following the accident, the evidence consisting of a piece of cloth from decedent's clothing which Kusch found partially embedded in the gravel at that spot. Kusch also testified he found no marks or damage to the body of the truck but did find traces of hair, skin and blood on the left front leaf spring from which he concluded that portion of the truck's undercarriage struck decedent.
Plaintiff adduced considerable evidence regarding young Fontenot's panic stricken behavior following the accident as well as his initial denial of any knowledge concerning the occurrence of the accident and his admission of his connection therewith only when confronted with the accusation by Trooper Kusch several hours later. The evidence in question is immaterial except only insofar as it may impeach Fontenot's testimony. From the entire record, however, we conclude that despite the fact Fontenot obviously "panicked" upon discovering he had run over the body of an acquaintance and initially denied any knowledge of the accident, nevertheless in both his deposition and testimony taken at the trial below he has, in our judgment, honestly and sincerely attempted to relate the details of the accident as best he can recall and reconstruct them.
While it is not shown with absolute certainty that Gregoire was killed by the truck being driven by Fontenot, we pretermit all consideration of this issue in view of our conclusion on the question of defendants' liability under the doctrine of last clear chance.
The doctrine of last clear chance concedes plaintiff's negligence. Dean v. Pitts, La.App., 133 So.2d 917; Accardo v. Grain Dealers Mutual Insurance Co., La. App., 151 So.2d 116.
In substance learned counsel for appellant argues Gregoire's admitted negligence in lying prostrate in a drunken stupor on a public road is no bar to appellant's recovery because such an individual is not beyond the protection of the law but rather such *382 negligence is "passive" and therefore does not constitute a proximate cause of the accident and resulting injury. Predicated on this premise, it is argued that the asserted negligence of Fontenot in failing to avail himself of the last clear chance to avoid the accident was the sole proximate cause of Gregoire's injury and death. Specifically able counsel for appellant argues Fontenot was traveling at an excessive rate of speed, failed to maintain a proper lookout, failed to stop in time to avoid running over Gregoire and failed to swerve his vehicle to pass either to the right or left of Gregoire's prone body. In support of his contentions astute counsel for appellant relies primarily upon Gouzien v. Feraci, 2 La. App. 115; McGuire v. Vicksburg S. & P. R. Co., 46 La.Ann. 1543, 16 So. 457; Mc-Clanahan v. Vicksburg S. & P. Ry. Co., 111 La. 781, 35 So. 902; Grennon v. New Orleans Public Service, 10 La.App. 641, 120 So. 801, and Brown v. Chicago R. I. & P. Ry. Co., La.App., 14 So.2d 307.
It is now well established jurisprudence that the doctrine of last clear chance does not apply unless the following elements are shown: (1) the injured plaintiff was in a position of peril of which he was either unaware or from which he was unable to extricate himself; (2) defendant was in a position to discover plaintiff's peril or, by the exercise of reasonable care, should have observed plaintiff's danger; and (3) defendant must have had an opportunity, through the exercise of reasonable care, to avoid injuring plaintiff.
The question of whether last clear chance is applicable in the case of injury or death resulting from an accident occurring when a pedestrian lying prostrate on a public highway in a drunken stupor is run over and struck by a motor vehicle, appears res nova considering we have been cited no case involving such a factual situation and our own research has failed to disclose a precedent exactly in point. We believe, however, the doctrine to be clearly applicable to such a factual situation provided the three basic essentials necessary for invocation of the principle of last clear chance are established by plaintiff by a fair preponderance of evidence. Grennon v. New Orleans Public Service, supra. It must be borne in mind, however, that each case must stand or fall upon its own peculiar facts and circumstances in accord with the well established principle that the alleged negligence of a defendant and his consequent liability to an injured plaintiff is to be determined in the light of the circumstances surrounding each individual case.
Our careful consideration of Gouzien v. Feraci, 2 La.App. 115, relied upon by counsel for appellant reveals said authority to be readily distinguishable from the case at bar inasmuch as the cited case involved an intoxicated pedestrian struck while in the act of crossing a street at an intersection. Similarly McGuire v. Vicksburg S. & P. R. Co., 46 La.Ann. 1543, 16 So. 457, may be distinguished from the case at bar in that it concerned a pedestrian walking along a railway track.
In McClanahan v. Vicksburg S. & P. Ry. Co., 111 La. 781, 35 So. 902, a railway company, was held liable for the death of a pedestrian run over by defendant's train while decedent was lying upon the defendant's tracks. The court therein concluded defendant's employees were guilty of negligence proximately causing the accident considering the track was straight, the accident occurred during daylight and the position of decedent was such that his presence could and should have been observed in time to stop the train and avoid running over decedent had defendant's employees maintained a proper lookout. While we are in accord with the conclusion reached in the McClanahan case, supra, in view of the factual findings of the court, the cited authority is not decisive of the case at bar inasmuch as the liability of defendants herein must be adjudged in the light of the facts and circumstances appearing in the record of this cause.
*383 Grennon v. New Orleans Public Service, 10 La.App. 641, 120 So. 801, cited by counsel for plaintiff, involved injury to a drunken pedestrian lying in a semi-reclining position on defendant's street car tracks at night in the City of New Orleans. Liability of defendant was therein predicated upon the express finding that plaintiff's apparent helplessness was such that not only was his danger observed and appreciated but also that his injury could have been avoided had proper precaution been observed. The same result was reached in Brown v. Chicago R. I. & P. Ry. Co., La.App., 14 So.2d 307, (a railroad case), wherein the doctrine of last clear chance was applied in an accident involving an intoxicated person asleep in a sitting position on defendant's railway tracks. The court found defendant's employees could and should have seen plaintiff in time to avoid the accident had they been keeping a proper lookout.
Although the principle established in Jackson v. Cook, 189 La. 860, 181 So. 195, to the effect a defendant will be held liable under the last clear chance doctrine for failure to discover plaintiff's peril which could or should have been detected upon exercise of reasonable care, is clearly applicable to the case at bar, we note therein an express finding of liability predicated upon defendant's failure to timely observe plaintiff, an intoxicated pedestrian, walking along the highway.
Applying the foregoing pertinent rules of law to the case at bar, we conclude plaintiff has established the inability of decedent to extricate himself from a position of peril (that of lying prostrate upon a public highway at night) by reason of voluntary intoxication which utterly incapacitated decedent.
In resolving the second element of last clear chance, namely, whether defendant could or should have discovered decedent's peril by the exercise of ordinary and reasonable care, we conclude the issue must turn upon the unusual, extraordinary and unexpected nature of the obstruction thus created by decedent.
It is undisputed the highway on which the accident occurred is an inferior, secondary, little used graveled roadway only 21 feet in width and having very narrow shoulders, if any at all. At the time of the accident, defendant was driving southerly at a lawful rate of speed traveling with the wheels of his vehicle in the two "ruts" formed in the approximate center of the highway by the continuous use of that portion of the highway by both southbound and northbound motorists. According to the driver of the pick-up truck, he was at first unaware of the nature of the object in his path. Upon reconstruction of the event, however, Fontenot's testimony indicates Gregoire's head was probably lying in the rut or path in which the left wheel of the truck was traveling. Fontenot's testimony is clearly to the effect he was traveling with his lights on dim and did not see anything whatsoever until he was approximately 30 feet distant at which time it was too late to swerve his vehicle. He stated positively he did apply his brakes and come to a stop approximately 15 feet beyond Gregoire's mangled body. Upon returning with his father to the scene, it appears that though both father and son were then aware of Gregoire's presence and were both maintaining a sharp lookout, nevertheless the night was so dark and visibility so poor, it was not until they were within 60 feet of the body did the younger Fontenot see decedent's body and called his father's attention to it. We are of the further opinion the fact that Gregoire was at least partially clad in faded khaki caused his body to more or less blend with the gravel on which he lay resulting in his being rendered more difficult of detection, at least more difficult to recognize as a human being lying across a public highway.
In view of the circumstances obtaining herein, we believe this a proper instance for application of the principle announced *384 in Tauzier v. Bondio, 237 La. 516, 111 So.2d 756, wherein the Supreme Court held a driver free of fault in not discovering an object or pedestrian when the driver has no reason to anticipate the presence of the pedestrian or obstruction in the highway under conditions making discovery difficult. The same principle was applied in Puissegur v. Louque, La.App., 113 So.2d 795, in which this court held a motorist did not have the last clear chance to avoid striking an automobile parked on a highway without lights on a dark drizzly night. We note further the rulings in the Tauzier and Puissegur cases, supra, are in accord with Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909, which held a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which he had no reason to anticipate he would encounter on the highway. In a number of cases the identical principle has been employed in the disposition of a plea of contributory negligence asserted in bar of the claim of a plaintiff seeking damages for personal injury and property damage resulting from his running into an unexpected obstruction. See Josey v. Granite State Fire Insurance Company, La.App., 122 So.2d 303, Robards v. American Automobile Insurance Co., La.App., 128 So.2d 44; Fisher v. Norwich Union Fire Insurance Society, Ltd., La.App., 119 So.2d 562.
An attempt was made in the court below to establish defendant's negligence for failure to discover Gregoire's presence by showing that, since there were no sidewalks on either side of the highway and local residents were known to walk upon the highway, Fontenot should have been more alert for the presence of pedestrians. Granted there might be some merit in this contention had Fontenot struck Gregoire while the latter was walking upon the highway, such circumstance cannot be the deciding factor in the case at bar because the record shows beyond the peradventure of a doubt Gregoire was not walking on the highway but lay prone across the road in a drunken stupor. Such an obstruction defendant neither could nor was expected to anticipate. The record is utterly barren of even the slightest proof Gregoire was known to lie down upon the highway and such circumstance was known to Fontenot thereby imposing upon Fontenot the duty and obligation of anticipating the possibility of encountering Gregoire in such position.
Under the circumstances shown we conclude defendant Fontenot was free of negligence proximately causing the accident in question. Judgment affirmed at appellant's cost.
Affirmed.
REID, J., recused.
HERGET, Judge (dissenting).
The factual issues involved in this case have been accurately stated in the majority opinion. Though the query is raised the appeal presents a determination of two issues, (1) whether the defendant driver ran over the prone body of decedent while decedent was yet alive, causing his death; and (2) whether the defendant driver had the last clear chance to avoid the accident, in actuality the decision of the majority is predicated on the finding that the driver, a minor, Allen Dale Fontenot, son of A. J. Fontenot, insured by defendant, Ohio Casualty Insurance Company, did not have the last clear chance to avoid striking Joseph Long Gregoire, causing his death.
In the application of the last clear chance doctrine, in my opinionand I do not believe in this Court there is any difference of opinion thereonit is apparent the deceased was in a position of peril of which he was unaware and was unable to extricate himself. Therefore, the only questions for resolution are: (1) whether Allen Dale Fontenot, by the exercise of reasonable care, could have observed or should be legally held to have observed the precarious position of the deceased; and (2) whether Allen Dale Fontenot, exercising reasonable *385 care, could have avoided striking the prostrate body of Gregoire.
In the cases of McClanahan v. Vicksburg S. & P. Ry. Co., 111 La. 781, 35 So. 902 (wherein plaintiff sued for the wrongful death of a person by a railroad train) and Grennon v. New Orleans Public Service, 10 La.App. 641, 120 So. 801 (wherein damages were sought for the injury of a person by a street car in the City of New Orleans) allegedly, in both cases, because of the negligence of the operators of the conveyances to ascertain and observe the danger in which the individuals had placed themselves, resulted in awards to claimants for damages predicated on the negligence of the operator in each case upon seeing or being held responsible for timely observing the imminent position of danger in which the accident victims had negligently placed themselves, therefore giving application to the doctrine of the last clear chance. In my opinion the requirement that the engineer on a train be held negligent for failing to observe a human being on the railroad track has less basis for "raison d'etre" than to hold a motorist on a straight highway negligent in failing to observe, while driving at night, the body of a human being lying in the highway.
The majority recognized the doctrine enunciated in Jackson v. Cook, 189 La. 860, 181 So. 195 to be applicable to the resolution of the issue before us, though they absolve young Fontenot from liability for the death of Gregoire based upon Fontenot's statement that immediately prior to the accident he was driving with his lights on dim and did not observe the deceased's prostrate form in the road until he had reached a point thirty feet therefrom. They supply the possible reason for Fontenot's failure to observe Gregoire was Gregoire's wearing apparel, "faded khaki," which, in the opinion of the majority, caused the body to "* * * more or less blend with the gravel on which he lay * * * ". On the trial of the case, it is significant to the author of this opinion the driver of the offending vehicle did not advance this excuse for his failure to timely observed deceased.
This unfortunate accident happened in the early morning hours when young Fontenot had admittedly imbibed of two beers. (This, in itself, was no admission of violation of the statute for drunk driving, following the determination by the Supreme Court that beer was not an intoxicating liquor.) State v. Viator, 229 La. 882, 87 So.2d 115. However, we note, following this decision, in 1956, the Legislature saw fit to change the statute so as to describe the offense as "while under the influence of alcoholic beverage," thereby amending LSA-R.S. Sec. 14:98, and in State v. McAlister, 234 La. 1028, 102 So.2d 444 the Supreme Court gave recognition to the right of the Legislature to make such change. The record does not reflect that at the time of the occurrence of the accident young Fontenot was intoxicated. However, the statement brings back to memory my experiences as District Judge, when, invariably, individuals charged in criminal court with the offense of driving while under the influence of intoxicating liquor always conceded they had "had two beers." The evidence does show, however, that after striking the prone body of Gregoire, Defendant journeyed to his home where he informed his father someone other than he had struck Gregoire and Gregoire (a friend of his) was lying in the road in a serious condition. Thereupon the father and son returned to the scene. The majority opinion gives credence to the fact that upon their return, the Fontenots, despite the fact they were intent upon locating the body of Gregoire, did not discover Gregoire until they were within sixty feet of him. This is, of course, a self-serving declaration. Upon returning to the scene, young Fontenot, still refraining from acknowledging the fact he ran over the body of Gregoire, assisted in calling the coroner to the scene and, in my opinion, in full consciousness of his guilt failed to inform the investigating officers who arrived at the scene that he, Fontenot, had run over the prostrate form of Gregoire. Actually, *386 as the record shows, it was not until the officers made a check of the Fontenot vehicle and found hair of the deceased and fragments of his clothing on the undercarriage thereof that young Fontenot, upon consultation with the officers when confronted with such factsin the absence of his father who begged upon being apprised by the officer of the purpose of the visit to be excused from the embarrassment of such confrontationadmitted he ran over the body of Gregoire.
The evidence shows the roadway where this accident occurred was straight. In my opinion giving due regard to the statutory requirements that a motorist drive with the lights of his vehicle turned on so as to illuminate the road ahead of him and thus enable the driver to observe that which he should seethough not required to anticipate a human being will make a sleeping bed out of the roadbedyoung Fontenot failed to meet this burden resting upon him. Inasmuch as the doctrine of last clear chance is predicated upon the admitted negligence of the injured party, the only issue remaining is whether, within reason and by the exercise of due care, Fontenot should have seen Gregoire lying in the road. In my opinion counsel for the insurance company and the insured, Fontenot, were under the duty and obligation to establish this defense. From my reading of the record there appears to be no reasonable explanation for the failure of young Fontenot to have discovered the body of Gregoire in time to prevent this unfortunate accident, either by stopping his vehicle or diverting its course to some other portion of the highway. I am of the opinion that Fontenot was negligent and Mrs. Josephine B. Gregoire is entitled to recover damages against the Defendants for the wrongful death of her husband.
For these reasons I respectfully dissent.
PER CURIAM.
In application for rehearing, learned counsel for appellant contends our original opinion erroneously inferred it was incumbent upon plaintiff to establish with absolute certainty that decedent's death was in fact caused by the truck being driven by Allen Fontenot. In so maintaining, counsel is eminently correct. We concede the law of this state is settled to the effect such circumstance need only have been established to a reasonable certainty by a fair preponderance of the evidence.
Our initial error, however, is of no moment in the instant case considering our conclusion Fontenot was guilty of no negligence whatsoever and did not have the last clear chance to avoid the accident.
Rehearing denied.
HERGET, Judge.
Though I am in accord with the correction made in the Per Curiam, I respectfully dissent from the refusal to grant a rehearing.