REID, Judge.
A two-vehicle automobile accident which occurred on May 17, 1961, at 11:30 P.M. in the City of Donaldsonville resulted in this suit. Plaintiff John J. Bogasky was driving a 1958 Buick in an easterly direction on U.S. Highway 1 (going from White Castle towards Donaldsonville) when, shortly after entering the Donaldsonville city limits, his vehicle was struck from behind by a 1959 El Camino Chevrolet pickup truck owned and operated by defendant Ralph Falsetta. Plaintiff sues for property damage and personal injuries. Defendant reconvened and Home Fire & Marine Insurance Company, collision insurer of the Bogasky vehicle, intervened for the amount previously paid to plaintiff pursuant to the terms of the policy.
After trial of the case the District Court rendered judgment rejecting the demands of all parties and dismissing plaintiff’s principal demand, the defendant’s reconven-tional demand, and the petition of intervention. Plaintiff alone has appealed, and there is no answer to the appeal. Therefore the reconventional demand and the intervention are not before us.
Appellant has not favored the Court with an assignment of errors in accordance with the rules.
In his reasons for judgment the district court concluded as follows:
“The plaintiff, whether directly or in reconvention, has the burden of proof. On the basis of the testimony in the record the court cannot find that the plaintiff has proven that the accident was due solely to the negligence of the defendant in following too close or in failing to maintain a proper lookout — at the very least the plaintiff was guilty of contributory negligence in stopping suddenly immediately in front of the defendant.
On the other hand, on the basis of the testimony in the record the court cannot find that the defendant-plaintiff in re-convention has proven that the accident was due solely to the negligence of plaintiff in stopping suddenly — at the very least the defendant-plaintiff in reconvention was guilty of some degree of con- *100 tributary negligence in following too close or in failing to maintain a proper lookout. Neither party having met the burden of proof the court will dismiss both the original and the reconventiona 1 demand.”
As we understand the foregoing, the district court found both parties con-tributorily negligent because neither had borne the burden of proving he was not contributorily negligent. It is axiomatic that the burden of proving contributory negligence is upon the person raising the plea, and it cannot be presumed. Campisi v. Fidelity & Casualty Co. of New York, La.App., 152 So.2d 88; Franicevich v. Lirette, 241 La. 466, 129 So.2d 740.
The district court found that the plaintiff “at the very least” was guilty of contributory negligence in stopping suddenly immediately in front of the defendant, and that the defendant was “at the very least” guilty of contributory negligence in failing to maintain a proper lookout and in following too close. “Neither party having met the burden of proof the court will dismiss both the original and the reconventional demand.”
The appellant, seeking a review on the facts as well as the law, contends that the district court committed manifest error.
Plaintiff and his wife were traveling from White Castle to Morgan City in separate cars, the plaintiff following his wife. Mrs. Bogasky had been on her way to Memphis, Tennessee and had a flat tire. Mrs. Bogasky was afraid to continue her trip because the spare tire was not very good. She called her husband, who drove to meet her, and then after making a vain trip to Plaquemine in hopes of finding a garage open where they could buy a new tire, they decided to “take it easy” and drive io their home in Morgan City where they could get a new tire in the morning. It was agreed between Mr. and Mrs. Bogasky that they would stop somewhere in Donald-sonville where they could pull off the highway and decide whether they would try to get a new tire there or go on to Morgan City.
Mrs. Bogasky, driving an Oldsmobile, pulled off the highway onto the right shoulder, within the City of Donaldsonville in front of Bob Seeds Lounge. Mr. Boga-sky testified that he was following his wife and reduced his speed to twenty-five miles per hour as he entered the city limits by applying his brakes. Mr. Bogasky began to slow down in order to pull off the highway and stop to the right of his wife’s car and was traveling “between twenty and zero” when he was struck from the rear by defendant’s vehicle. Plaintiff stated that he had his wife in sight at all times, and when they reached the city limits he was forty or fifty feet behind her. Mrs. Bogasky testified she could see the headlights of two cars in her rear view mirror as she drove but she could not testify whether they were the headlights of the plaintiff’s and defendant’s cars. She also testified that she had been parked for two or three minutes before the accident occurred.
Mr. Falsetta testified that he was following the plaintiff about 35 or 40 feet behind, that they both slowed down when they entered the city, and he was traveling between thirty and thirty-five miles an hour when Mr. Bogasky suddenly stopped in the middle of the right lane of traffic. Mr. Falsetta attempted to turn left to avoid a collision, but the right front of his pickup struck the left rear of the Buick. He also testified that he applied his brakes forcefully in an attempt to avoid a collision.
Defendant contends plaintiff made an un-signalled, sudden stop.
Plaintiff contends he did not stop suddenly, that he turned his right turn signal light on forty or fifty yards from the point of impact, and that he applied his brakes preparatory to turning off the highway onto the right shoulder to go behind and to the right of his wife’s car. That he had not begun to turn off the highway is shown by the fact that the impact propelled his vehicle beyond his wife’s car and then off the *101 road into a ditch. His vehicle was a total loss.
Defendant testified by deposition as follows :
“Q. Well, did he apply his brakes to stop, sir ?
A. Evidently he did, he had to.
Q. Did you see his brake lights?
A. He might have flashed them, but I didn’t see it. * * * ”
At the trial he testified:
“Q. Did you notice this automobile prior to entering the city limits ?
A. When I left the club I noticed the car.
Q. You followed it into the city limits ?
A. Yes.
Q. Did the Bogasky automobile give any signal that it was going to stop ?
A. None whatsoever.
Q. Was there any indication from the Bogasky signal lights that he was going to turn right or left ?
A. No, not that I noticed. He just made a sudden stop. That’s all I know.
Q. Where did this accident occur?
A. Right in front of Mr. Seeds Magnolia Filling Station.
* * * * * *
Q. How far is it from the Town and Country down to the city limits where the accident occurred?
A. I reckon about a mile or a mile and a half.
Q. When you pulled out into that highway at the Town and Country where was the plaintiff’s car ?
A. I don’t know where it was then.
At that time you didn’t see it at all? ©
No, sir. >
When you got on the highway and started towards Donaldsonville how fast did you go at first? lO
After I had shifted my car and everything about fifty-five or sixty miles an hour.
You had a hand shift, first, second and third? a
Yes, sir. >
You got up to about fifty-five miles an hour? ¡O
Yes, sir. >
You still didn’t see the plaintiff? O
It didn’t take me too long before I did see him. >
It didn’t take long before you saw him? O!
That’s right. <
What was it that you first saw about it ? O!
I saw the back of the car. >
Did you see any lights on his car? lO
I don’t remember seeing any lights on his car. >
Could you see any headlights out in front of him? a
All I know is that there was a car there. I didn’t think anything was going to happen.
This is a good bit before the wreck occurred anyway, isn’t that true? a
Not too far. When I met him he was about two or three blocks out of the city limits and then when he started slowing up I started slowing up. I noticed that he was slowing up and I started slowing up too. I had kind of gained on him.
*102 What was the thing that made you know he was slowing up, the first time you knew he was slowing up? a
I was gaining on him.
You were coming up on him?
Yes, sir.
You knew that?
Sure.
Was that before you got to the city limits ?
Yes, sir. >
When you got to the city limits— ¡O
We slowed up. ¡>
Did he slow up too? O
Yes he slowed up. >
How could you tell he slowed up ? ©
He slowed up because I slowed up. I would have never hit him at all if he wouldn’t have slowed up and then stopped sudden on me. There was nothing else that I could do. >
How fast was he going? ©
I don’t know exactly how fast he was going. When we got into the city limits and we passed about thirty-five or forty or sixty feet from the caution light or a hundred and fifty feet or so he stopped all at one time on me. >
*****
When this gentleman came to a dead stop right real quick, a sudden stop, did you see the tail lights on his car? a
No, sir, I didn’t notice that. <
You didn’t see that? a
No, sir, I don’t remember seeing it. <
How long was he stopped before you knew it? a
A. He stopped all at one time. That’s when I hit him. There was nothing at all I could do about it.
* * * * * *
Q. Could you estimate your speed at the time of impact?
A. Between thirty and thirty-five.
Q. Did you skid your tires ?
A. Yes, sir, I did.
* * * * * *
A. I left the Town and Country Club and got on the highway and I was driving and I spotted this car, gained on the car, started to flash my lights, and slowed up considerably, driving about fifty-five or sixty miles an hour. Got into the city limits and I slowed up to about twenty-five or thirty miles an hour. Mr. Bogasky made a sudden stop on me and there was nothing that I could do. I slowed down to about twenty miles an hour by then and I hit the man. When he made a sudden stop on me I tried to avoid him by turning left and I applied my brakes. There was nothing I could do in the short time I had.
Q. When you first noticed Mr. Boga-sky’s automobile on the highway stopped about how far were you from him at that time?
A. About twenty-five or thirty feet.”
Both policemen who investigated the accident died before the trial of the case, but the testimony of one of them, Eno Alle-man, had been taken by deposition. Mr. Alleman testified that Mr. Falsetta stated he did not notice Mr. Bogasky stopping until he was fifteen feet away. Although Mr. Falsetta testified several times that he applied his brakes forcefully enough to skid his tires, Mr. Alleman testified that he examined the highway and found no evidence of skid marks.
When testifying by deposition, Mr. Fal-setta admitting having taken three or four *103 scotch-and-sodas within an hour of the accident at Bob Seeds Lounge. He then went to the Town and Country Club about a mile and a half or two miles out of Donaldson-ville where he stayed for ten or fifteen minutes without talcing a drink. The accident occurred when he was returning to town from the club. At the trial he testified he had two or three drinks of scotch. On cross-examination he testified he had “Two, I guess.” He further testified:
“A. No, I’m not saying exactly positively what I had. I say two or three. It could have been four.
Q. Could it have been more ?
A. No, it couldn’t have been over two or three at the most.”
Mrs. Bogasky testified as follows:
“Q. Did you notice anything unusual about his appearance?
A. He acted like a mad man.
Q. Could you tell whether or not he had been drinking?
A. He appeared to have been drinking.
Q. Why do you say that?
A. Because of his conduct.
Q. What do you mean by that ?
A. To begin with he tried to tell the officers what to do. In other words, he was going to take over. Later on when everybody laughed at him he said that I had moved my car. My car wasn’t even involved in the accident. He asked me for my marriage license instead of my driver’s license. He said that I had been down the road with my husband, who he said wasn’t my husband, to a motel and that we had been playing around on the way back and that was the reason for the accident.”
Testimony of Mr. Bogasky and Officer Alleman was to the effect the defendant was shouting in a loud voice and swinging his arms to the extent he, apparently accidentally, knocked the notebook out of the officer’s hands.
Mr. Robert Seeds testified that defendant had been in his establishment for about a half hour, that he believed Mr. Falsetta had two highballs while there, and that he was not intoxicated when he left.
Plaintiff does not contend that Mr. Fal-setta was intoxicated, but contends that defendant had imbibed sufficiently to affect his perception and reflexes.
In order to prove that a motorist is incapable of safely operating a motor vehicle, it need only be shown that he had sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired. Dowden v. Bankers Fire & Marine Insurance Company, La.App., 124 So.2d 254. The existence of a state of impairment of such faculties is the issue, and if such impairment does not exist the fact that a large number of drinks were consumed would be immaterial. Addington v. American Insurance Co. of Newark, N. J., La.App., 162 So.2d 190. While there is evidence suggesting that Mr. Falsetta’s perceptive faculties may have been affected by the consumption of alcohol, we need not base our decision on such a finding because the failure to see what one should see or to react as a normal, reasonable and prudent man in possession of all his faculties should react may constitute negligence independent of a showing of intoxication.
Plaintiff testified he had submitted his car to the annual safety inspection five weeks prior to the accident, and that his brake and signal lights were functioning on the night of the accident.
Defendant, apparently doubting whether the plaintiff’s signal lights were *104 working, was also unable to state equivocally whether plaintiff’s vehicle did or did not have rear lights or head lights although he states he followed the plaintiff for more than a mile. Common experience rejects the possibility of not knowing whether a car ahead is operating without any lights after consciously following it for a mile on a rural highway at 11:30 at night. Mr. Fal-setta’s testimony is in general self-contradictory and his answers, unresponsive. It may be that he was merely unwilling to concede that Mr. Bogasky was driving with his lights on, but the evasive nature of his answers and the many inconsistencies in his testimony serve only to reduce the value and weight that can be given to it.
Mr. Bogasky’s unequivocal testimony regarding the fact that his lights were operational stands uncontradicted. There is nothing in the record to justify a contrary conclusion. When Mr. Bogasky applied his brakes to stop, suddenly or otherwise, defendant did not see the stop lights. Therefore, even if we should discount plaintiff’s testimony that he illuminated his right turn signal, we must conclude defendant did not see what he should have seen.
The effect of this conclusion is to cast additional doubt on defendant’s statement that plaintiff stopped suddenly, because it is apparent he was not keeping a proper lookout. Defendant’s negligence in this regard was a proximate cause of the accident, and because of our conclusions hereinafter explained regarding the issue of contributory negligence, defendant’s negligence must be regarded the sole proximate cause.
Turning to the issue of contributory negligence, we reiterate what we pointed out initially, namely, that the burden of proof rests with the defendant who pleads contributory negligence.
 Defendant contends that plaintiff was guilty of contributory negligence in stopping suddenly without warning. Plaintiff testified unequivocally that he put his right turn signal on before slowing down. This testimony must be weighed against that of the defendant who, as we have concluded, did not see all he should have seen. There is nothing to corroborate the defendant’s testimony except a guess on his part that the plaintiff suddenly caught sight of his wife on the side of the road and immediately attempted to stop. This indeed is possible, if Mrs. Bogasky’s testimony that she was parked for two or three minutes before the collision is accepted as correct. It does not, however, establish that plaintiff stopped suddenly, nor does it render the theory more probable. It could as well be theorized that if Mr. Bogasky’s testimony is accepted to the effect he was following forty or fifty feet behind his wife when they reached the city limits, he was following so close that when she decided to stop, he had to stop suddenly to avoid hitting her. Many other theories are possible. Proof that something is impossible serves to contradict, but proof that it is possible has little or no probative value as to the ultimate issue of fact unless all other alternatives are proved to be impossible. The district court seized upon the inconsistency between plaintiff’s testimony and that of Mrs. Bogasky, and concluded that Mrs. Bogasky’s version explained Mr. Bogasky’s reason for stopping suddenly. The district court suggested that when Mr. Bogasky noticed his wife’s car on the side of the road, he naturally and involuntarily applied his brakes and stopped suddenly, suggesting an emergency stop, but the absence of skid marks shows plaintiff did not involuntarily make a forceful stop. As we have pointed out other reasons could have impelled Mr. Bogasky to stop suddenly, but the reasons are immaterial where the question is whether he did in fact stop suddenly without adequate warning. Upon this vital question of fact rests defendant’s plea of contributory negligence. The sole evidence relied upon is the testimony of defendant which we have shown is unreliable because he did not see all he should have seen and could not give an accurate narration of the facts.
*105 Defendant lias cited cases to the effect that a motorist who stops suddenly in the traveled portion of the highway without warning or signal is guilty of negligence. Undoubtedly those cases would be applicable had defendant carried the burden of proving that plaintiff had in fact stopped suddenly without signal or warning, but he has failed to make such proof.
As a result of the accident, plaintiff suffered contusions and abrasions on the shins and a pain on lateral motion of the neck. He was seen by Dr. Roy G. Folse, a general practitioner, in Donaldsonville May 18, 1961 and again on May 24. He was given a booster lockjaw injection. No X-rays were taken, and finally on May 31, Dr. Folse referred him to Dr. Bannerman in Baton Rouge. Instead plaintiff went to Memphis, Tennessee where a pain in his left shoulder became so severe he was hospitalized overnight at St. Joseph Hospital and referred to a bone specialist. Plaintiff was seen by Dr. Paul H. Williams, orthopedist, of Memphis, Tennessee, on three occasions from June 5, 1961 to June 9, 1961. Dr. Williams was concerned mostly with plaintiff’s complaint of pain in the left shoulder, and after studing X-rays diagnosed a calcific tendonitis of the shoulder. Dr. Williams injected a local anesthetic and “needled” the area with large needles to permit drainage of the calcific material into surrounding tissues. In addition Dr. Williams administered an injection of Aristo-cort solution, and gave plaintiff Percodan tablets for pain.
Plaintiff returned to Louisiana and was examined by Dr. Guy J. Dunning, orthopedist, of Lafayette, Louisiana, on July 14, 1961.
Dr. Dunning found no muscle spasm and diagnosed the condition as a subsiding strain of the muscles and ligaments of the posterior region of the neck generally known as a whiplash injury. There was some evidence of a pre-existing arthritis or bursitis. The calcific deposit was also noted, but Dr. Dunning testified that it would not be the result of trauma unless it was an old trauma and more likely it would have resulted from a direct blow. Dr. Dunning also testified plaintiff would suffer three months at most from his injuries. Dr. Dunning recommended light activity and stated that plaintiff could not work ten or twelve hours a day six or seven days a week depending also on the amount of standing and bending he was required to do. Dr. Dunning further stated plaintiff could do no strenuous manual labor for a year.
Plaintiff testified he was totally disabled for three months following the accident and that for an additional three months he was partially disabled. Mr. and Mrs. Bogasky operate two restaurant and bar businesses— one in Memphis, Tennessee, and the other in Morgan City. As a result of his disability they were compelled to hire an additional employee at $25 per week plus room and board. A total of four hundred dollars was paid to this employee. Nevertheless plaintiff has apparently not required medical attention since July 1961.
We believe an award of $1500 for plaintiff’s injuries in this case would be appropriate. See Williamson v. Roberts, La.App., 103 So.2d 499; Woodard v. Burkes, La.App., 135 So.2d 333. In addition plaintiff is entitled to judgment for $400 for the wages of the additional employee, $50 for the portion of the damages to his automobile not covered by insurance as a deductible, and $88.58 medical expenses. Plaintiff did not prove the claim for loss of wages. Accordingly the judgment of the district court is reversed, and judgment rendered in favor of plaintiff and against defendant for $2,038.58 plus interest from date of judicial demand, and for all costs of court, said costs, including expert fees, to be fixed and taxed by rule.
Reversed and rendered.