217 So.2d 205 (1968)
Henry SANDERS et ux., Plaintiffs-Appellants,
v.
Frederick J. EILERS et al., Defendants-Appellees.
No. 7481.
Court of Appeal of Louisiana, First Circuit.
December 16, 1968.
*207 William D. Hunter, of Lippman & Hunter, Morgan City, for plaintiffs-appellants.
Norman P. Foret, of McBride & Brewster, Lafayette, for defendants-appellees.
Before LOTTINGER, ELLIS and BAILES, JJ.
BAILES, Judge.
Plaintiffs, Henry and Brenda Sanders, husband and wife, brought this suit against Frederick J. Eilers and the public liability insurer of his 1961 Thunderbird automobile, State Farm Mutual Automobile Insurance Company, seeking damages for personal injuries and medical expenses incurred as the result of an automobile accident. The accident occurred in Morgan City, Louisiana, on U.S. Highway 90, a four lane roadway, when Brenda Sanders was allegedly run over by defendant Eilers' vehicle while she was lying unconscious in the outside or right hand lane of the two eastbound traffic lanes. She had been knocked unconscious when she fell or jumped from the automobile in which she was a passenger.
Plaintiffs alleged negligence on the part of the defendant driver in several specifics which in substance may be generalized as failure to maintain a proper lookout and proper control of his vehicle, driving while under the influence of intoxicants and driving at an excessive rate of speed. Defendants, in answer, denied negligence on the part of Eilers and by way of further answer alleged that the Eilers vehicle did not come into contact with Brenda Sanders, or alternatively, if there was contact, that the plaintiff's damages resulted solely from the negligence of Brenda Sanders or recovery by plaintiffs was barred by the contributory negligence of Brenda Sanders, either type of negligence being imputable to Henry Sanders inasmuch as he and his wife were engaged on a community mission.
Judgment was rendered in favor of the defendants. Plaintiffs perfected this devolutive appeal relying solely on the applicability of the doctrine of last clear chance to the facts of this case. This doctrine, of course, is not applicable in the absence of negligence in the conduct of the defendant. The trial court, in its reasons for judgment, stated: "* * * there is no showing that Mr. Eilers was actionably negligent * * *." We are unable to detect manifest error in this finding and rest our affirmation of the judgment appealed from on it.
The accident occurred at approximately 1:00 o'clock on the morning of April 11, 1965, on U.S. Highway 90, which at the point in question is a straight, four lane, blacktop highway running generally east and west, with a posted speed limit of 45 mph. The highway was heavily traveled even at the early morning hour when this accident happened. The impact occurred, as one moves eastward, at a point between a stop light at the intersection of Myrtle Street and Highway 90 and the road side sign of Guarisco Motors, Inc. The night, though clear, was moonless and there were no street lights along the roadway. The only light in the area was that provided by the large Guarisco sign, which, at most, was very ineffective in lighting the highway.
The plaintiffs, after leaving a local night spot, were traveling east in the inside lane of Highway 90. Prior to reaching the Guarisco sign Brenda Sanders fell or jumped *208 from her automobile, landed in the outside or right hand eastbound traffic lane and was knocked unconscious. She is a brunette and was, on this night, dressed completely in black. Defendant Eilers, also traveling east, was in the outside lane. He approached the unconscious plaintiff a short time after she had fallen and ran over her.
The defendants contended that the Eilers' vehicle did not hit Mrs. Sanders inasmuch as she was lying parallel with the roadway in the center of the outside traffic lane and Eilers was able to pass over her body without contact. However, the preponderance of the evidence is to the effect that Mrs. Sanders was lying on her back before the accident and after the passage of the Eilers vehicle was perpendicular to the course of the roadway, face down. Moreover, the physical evidence at the scene leads to the conclusion that the Eilers' vehicle pushed or dragged Mrs. Sanders some 26 feet east of the point at which she came to rest after jumping or falling from her car.
Neither can the negligence of Mrs. Sanders be seriously questioned. Though Mrs. Sanders testified that she did not remember anything that transpired after she entered the automobile upon leaving the night club, the record conclusively shows that she, in fact, jumped from the moving vehicle in which she was a passenger. Mr. Sanders testified that an argument was in progress as he and his wife were proceeding along the highway; in the course of that argument his wife threatened to jump from the automobile and the next second she was no longer seated beside him. On this appeal, appellants unequivocally admit the negligence of Mrs. Sanders.
Mr. Sanders and Mr. Eilers were the only eyewitnesses to the accident. Mr. Sanders testified that after leaving the Dream Lounge he drove his car eastward in the inside lane of Highway 90. He passed the Myrtle Street stop light without stopping, driving at a speed of 35-45 mph. When his wife jumped from the car he slammed on his brakes, stopped, put his transmission in the park position, got out and went to his wife who was lying unconscious a few feet to the rear of his stopped automobile. He was afraid to move her, not knowing the extent of her injuries, so when he saw the lights of an oncoming car he began to run westward down the center line of the two eastbound traffic lanes waving his hands. He stated that he was 150 feet from his vehicle when the oncoming vehicle passed him. The brakes of that car were applied immediately after it passed him, but Mrs. Sanders was hit. Mr. Sanders testified that it was a "very short time" between the time he got out of his car and the time his wife was hit.
Mr. Eilers testified that he left the Elbow Room night club at about 1:00 a.m. and was driving east in the outside traffic lane of Highway 90. He stopped at the Myrtle Street stop light for approximately 30 seconds but due to the bright lights of westbound traffic and his attention to the stop light he did not see the Sanders automobile ahead of him though he was looking eastward along the highway. As he left the stop light he accelerated to approximately 35 mph and then saw the Sanders' automobile silhouetted against the oncoming headlights. He was 100-125 feet from the vehicle. He saw Mr. Sanders moving around the left side of his car toward the rear when he was 80-85 feet from the automobile. He removed his foot from the accelerator. Sanders began waving his hands so he applied his brakes, believing that Sanders was "waving me off his car." Sanders' waving became more frantic so he locked his brakes and began sliding straight forward. He saw Brenda Sanders when he was only 25-30 feet away from her. All that he could do was to attempt to straddle her body. He testified that he could not say whether his usual reaction time was affected by the drinks he had consumed earlier.
Certain physical facts were established by the testimony of the officers of the Morgan City Police Department who investigated *209 the accident. The skid marks left by both vehicles were measured. The plaintiffs' car left 55 feet 10 inches of skid marks in the left hand eastbound traffic lane. The skid marks left by the Eilers vehicle were 114 feet 11 inches in length, beginning approximately 110 feet west of the Guarisco sign, and were located entirely in the right hand or outside eastbound traffic lane. Three pools of blood were found along the length of these latter marks. The first was approximately 55 feet from the beginning of the skid marks, the second approximately 33 feet farther east, and the final one at the eastern end of the skid marks. The second pool of blood had the imprint of a tire through it. The conclusion drawn by the policemen was that the first blood indicated the spot at which Mrs. Sanders originally hit the surface of the highway after jumping from her car. Thereafter, she rolled some 33 feet before she came to rest, unconscious. This was the indicated point of impact inasmuch as the blood showed tire prints through it and there was a short break in the skid mark of the left wheel of the Eilers vehicle. Upon impact at this point Mrs. Sanders was pushed or dragged approximately 26 feet to the point at which blood was located at the end of the skid marks. Captain Gros and Officer Price testified that Mr. Eilers was not intoxicated, Captain Gros noting that though Eilers spoke with a slightly "thick tongue" he exhibited no other signs of intoxication.
In relation to plaintiffs' specifications of negligence on the part of the defendant driver the charges of intoxication and excessive speed pose no serious difficulty in resolution. Though the evidence discloses that Eilers had five or six drinks between 9:00 p.m. April 10, 1965, and the time of the accident early the next morning, it was not proved that he was incapable of operating his vehicle. Plaintiffs were only required to prove that the defendant driver had a sufficient quantity of intoxicants to cause him to lose normal control of his mental and physical faculties and cause such faculties to be materially impaired. Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50; Bogasky v. Falsetta, La.App., 189 So.2d 98. The testimony, even as briefly reviewed above, preponderates in favor of the conclusion that Eilers had neither lost control of his faculties nor were these faculties materially impaired. And we certainly cannot find that as a matter of law five or six drinks over the course of an evening are sufficient to render one incapable of operating a motor vehicle. Thus, there was no proximate causal relation between the accident and the alcohol consumed by Mr. Eilers. In like manner, we are unable to find that the speed at which Mr. Eilers was driving in any way causally contributed to the accident. In general terms, the rule with regard to speed is that one must not drive at a speed greater than is reasonable and prudent under the existing conditions. LSA-R.S. 32:64. Mr. Eilers was driving well within the speed limit prior to the accident and at approximately the same speed which the plaintiff driver found reasonable before he was required to stop. We cannot find that Mr. Eilers' speed was incommensurate with the conditions then obtaining or in any manner unreasonable.
There remains only the charge that defendant Eilers failed to maintain a proper lookout and to keep his vehicle under proper control. The rule is well established that one who operates a motor vehicle on public highways has a never ceasing duty to keep a sharp lookout ahead. A motorist is therefore held to have seen that which in the exercise of ordinary care he should have seen. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195. Thus, though as a general rule a motorist may assume that the road ahead is safe for travel, he must when traveling after darkness or in circumstances of limited or impaired visability observe and so control his vehicle as to avoid discernable objects in his path of travel; that is, in adverse conditions a greater degree of care must be exercised.
*210 Watkins v. Strickland Transportation Co. (1956), La.App., 90 So.2d 561, and Hernandez v. State Farm Mutual Automobile Insurance Company (1966), La.App., 192 So.2d 679. This last rule however is subject to the well established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which under the circumstances are difficult to discover. Gregoire v. Ohio Casualty Ins. Co., La.App., 158 So.2d 379; Gros v. United States Fidelity & Guaranty Co., La.App., 183 So.2d 670. Under the factual circumstances obtaining at the time of this accident we cannot find that Mr. Eilers was negligent in his lookout or in the control of his vehicle.
The preponderance of the evidence is to the effect that Eilers observed the stopped Sanders automobile when he was 100-125 feet away from it. We are unable to find that he should have seen the stopped vehicle sooner for at the stop light his attention was properly directed at the signal and oncoming traffic and as he accelerated away from the light his vision was momentarily impaired by oncoming bright lights. Though during these periods of momentary visual obstruction his duty to maintain his vehicle under proper control was increased, his actions were not unreasonable. He did not reduce his speed but the degree to which speed must be reduced or other action taken when a driver's vision is impaired depends on the circumstances and the factual degree to which vision is impaired or obscured. We do not feel that defendant was required to stop or to leave the roadway, as appellants suggest, inasmuch as the period when one is blinded or partially blinded by oncoming bright lights is of such short duration in moving traffic situations that the visual obstruction is terminated before normal reaction time would allow a person to begin braking his automobile. Moreover, assuming that Mr. Eilers should have seen the stopped Sanders auto from the stop light or shortly thereafter, we do not feel that this is of any moment since the sighting of this vehicle would in no way have served warning that the outside traffic lane was obstructed and not open to the unimpeded flow of traffic. The earliest moment at which Mr. Eilers can be held to have been put on notice of the possibility of obstruction of his path of travel was when Mr. Sanders began waving his hands. Defendant driver testified that this was when he was 80-85 feet from the scene of the accident. Mr. Sanders testified that the Eilers vehicle passed him and therefore should have seen him 150 feet from the scene. On the basis of his testimony viewed as a whole we feel that Mr. Sanders probably overestimated this distance. In the time period that Mr. Eilers waited at the stop light and approached the scene of the accident, Mr. Sanders testified that he stopped his vehicle from a speed of 35 mph, got out of his car, went to his wife, examined her closely enough to determine that she only had a small cut above her eyebrow, noted the approaching Eilers vehicle, decided it best not to move his wife and then ran 150 feet waving his hands in front of him. We find the testimony of Mr. Eilers more convincing on this point. Mr. Sanders was near the rear of his stopped vehicle when Eilers noted his waving. Having released his accelerator when he first saw the stopped Sanders auto, Eilers applied his brakes and began to slow his vehicle when he saw this waving. Again we do not feel that he was required to come to an emergency stop or leave the surface of the roadway as he admittedly could have done. We find his assumption that Sanders was waving him away from the stopped vehicle was perfectly reasonable and in no way put him on notice that his lane of travel was obstructed by one in perilous condition. As the waving became frantic Eilers locked his brakes and then, when 25-30 feet away, saw Mrs. Sanders. At this point we can find no fault in Eilers lookout. Not only was Mrs. Sanders an unusual and unexpected obstacle in his patha body dressed in black, lying motionless on a blacktop highway on a dark nightthereby decreasing *211 his ability to see but also, and unfortunately, Mr. Sanders' presence on the center line of the highway required that Eilers' attention be diverted from the area directly in front of him inasmuch as a driver is bound to maintain his lookout not only for that which is in his path but also for that which is near his path of travel after having been put on notice by his frantic waving. Upon sighting Mrs. Sanders, the defendant driver was powerless to take effective action to avoid striking her. His brakes were already locked and he was skidding down the highway. Since a skidding motor vehicle is beyond the directional control of the driver we cannot find that Eilers' attempt to straddle the body was anything other than reasonable.
Appellants cite us the case of Brooks v. State Farm Mutual Automobile Ins. Co., La.App., 91 So.2d 403, as one of similar factual circumstances in which the defendant was held to be negligent in failing to maintain a proper lookout. Though factually similar we cannot ascribe to the rule which that case espouses. The court there stated at page 407:
"Admittedly Stewart was making no observation of the roadway but had his entire attention focused upon the Foster automobile. Under the circumstances we must conclude that this failure to observe the roadway constituted negligence."
The court then cited, among others, the cases of Rottman v. Beverly and Jackson v. Cook, supra. We do not believe the rule to be gleaned from those cases is that a driver of a motor vehicle may be found negligent solely because he is not watching the surface of the roadway ahead of his vehicle. The cited cases stand only for the proposition that a driver must keep a sharp lookout ahead and this includes not only that which is directly in the roadway ahead but also that which is near the roadway. The Brooks court in fact recognized this broad duty when it stated at page 407:
"We think the tendency of our jurisprudence shows an increasing emphasis on the duty of a motorist to watch and observe all that is within his field of vision along or in close proximity to the roads and highways upon which he travels."
In addition, as pointed out in the dissent in the Brooks case, to find that the defendant driver saw everything in the road ahead that he could see except the body which was hit and then to conclude that the defendant was making no observation of the roadway in a non sequitur.
In the instant case Mr. Eilers, the defendant driver, was maintaining a sharp lookout ahead of his vehicle. He saw all that could or should be seen at any given moment. His failure to see Mrs. Sanders before he did was not due to his failure to properly observe his path of travel but rather to the fact that her presence on the roadway could not be sooner discerned by a reasonably observant driver under the existing conditions.
There being no negligence on the part of the defendant driver, it follows that the doctrine of last clear chance is not applicable and the judgment of the trial court is correct. For the foregoing reasons the judgment appealed from is affirmed at appellants' costs.
Affirmed.