SHORTESS, Judge.
These consolidated cases arose out of a collision which occurred on April 26, 1978, on Louisiana Highway 77, a two-lane asphalt rural highway in Iberville Parish, Louisiana. At the time in question, Malcolm Orillion was proceeding north on La. 77 in his 1976 Chevrolet truck, with Manny Courtade as a passenger. Frederick Callo-way was operating a 1975 Chevrolet truck owned by Thomas B. Tucker, which had stalled in the northbound lane of La. 77. Orillion’s truck collided with the rear of Tucker’s truck; and now, he and Courtade seek damages for their injuries from Tucker, Calloway, and Southern Farm Bureau Mutual Insurance Company. The Louisiana Farm Bureau Mutual Insurance Company seeks recovery from Orillion for damages to the Tucker vehicle.
The trial court rendered judgment in favor of Orillion, awarding him $6,000.00 in general damages, in addition to special damages, and $2,000.00 in general damages to Courtade in addition to special damages. The trial court dismissed the claim of Louisiana Farm Bureau Mutual Insurance, who has filed this appeal along with Tucker, Calloway and Southern Farm Bureau Casualty Insurance Company (appellants).
Unfortunately, the trial court gave no reasons for judgment, but our examination of the record reveals the following facts: that Frederick J. Calloway was employed by Thomas B. Tucker on the date in question and was returning some saddles to Tucker’s camp in Tucker’s truck, which developed ignition problems; that the truck *377 stalled in the northbound lane of La. 77; that Calloway remained in the truck but could not start it; that the truck’s lights would not work; that it was approximately 7:30 p.m. and very dark; that Calloway had been stalled for about five minutes when Orillion, also headed north on La. 77, appeared; that Tucker’s truck was entirely in the northbound lane, some 300 to 400 yards north of a curve in the highway; that at this point the highway was straight and level and traversed a wooded area; that Orillion was going home for supper; that no other vehicles were traveling in either direction at the time; that Orillion did not see the Tucker truck until he was right on it and never applied his brakes, but did swerve to his left, striking the Tucker truck with the right front of his truck; that both Orillion and Courtade admitted to drinking two beers before the accident; and that both Orillion and Courtade sustained bodily injuries.
Appellants concede the negligence of Tucker and Calloway but argue that the trial court erred in failing to find that Orillion was (1) negligent, and (2) had the last clear chance to avoid the accident.
Appellants argue that Orillion was guilty of negligence because he operated his vehicle at a speed of 50 miles per hour when he could not see objects in the road more than forty feet away.
However, Mabile v. Thibaut Farms, 244 So.2d 66 (La.App. 1st Cir.1971), restated the law from Sanders v. Eilers, 217 So.2d 205 (La.App. 1st Cir.1968):
“The rule is well established that one who operates a motor vehicle on public highways has a never ceasing duty to keep a sharp lookout ahead. A motorist is therefore held to have seen that which in the exercise of ordinary care he should have seen. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195. Thus, though as a general rule a motorist may assume that the road ahead is safe for travel, he must when traveling after darkness or in circumstances of limited or impaired visibility observe and so control his vehicle as to avoid discernable objects in his path of travel; that is, in adverse conditions a greater degree of care must be exercised. Watkins v. Strickland Transportation Co. (1956), La.App., 90 So.2d 561, and Hernandez v. State Farm Mutual Automobile Insurance Company (1966), La.App., 192 So.2d 679. This last rule however is subject to the well established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which under the circumstances are difficult to discover. Gregoire v. Ohio Casualty Ins. Co., La. App., 158 So.2d 379; Gros v. United States Fidelity & Guaranty Co., La.App., 183 So.2d 6570.” 244 So.2d at 69.
Calloway made no attempt to warn oncoming traffic of his unlit, disabled truck and chose to remain inside the truck. It was a very dark night in a wooded area. No evidence established that Orillion failed to keep his vehicle under proper control as he approached the stalled truck. There was no evidence of excessive speed or impaired reaction. Orillion testified that he immediately moved to his left in an attempt to avoid the truck when he saw it, but he was unable to avoid the collision.
Both Orillion and Courtade admitted having two beers prior to the accident. Tucker, a defendant, felt that they showed signs of intoxication, while Alvin Daigle, an independent witness, indicated they did not. The trial judge obviously felt that intoxication was not a factor, and we are not in a position to say he was manifestly in error for so concluding.
The facts do not justify application of the last clear chance doctrine to Orillion. As indicated before, Calloway, on a dark night in a rural, wooded area, permitted his unlit, disabled truck to remain in the middle of the traffic lane and did not attempt to warn oncoming traffic of its presence. By the time Orillion saw the truck, it was too late to avoid the collision which occurred, even though he veered to his left in an attempt to evade it. The evidence obvious *378 ly indicated to the trier of fact that Orillion did not actually discover, nor was he in a position where he should have discovered, Calloway’s peril in time to avoid the accident with the exercise of reasonable care. Glatt v. Hinton, 205 So.2d 91 (La.App. 4th Cir.1967), writ refused 251 La. 861, 206 So.2d 712 (1968). The trial court was not clearly wrong in its finding.
QUANTUM
Appellants contend that the trial court was in error for awarding Orillion damages for an injury which was unrelated to the accident, and for making excessive awards to Orillion and Courtade.
Our analysis of this record reveals that the trial court (1) made no error in finding that Orillion’s injuries were related to the accident, and (2) did not abuse its discretion in its award of general damages to Orillion and Courtade.
The original treating physician, Dr. James Freeman, testified that Courtade sustained trauma to his' rib cage involving the thin covering and cartilage, which he called perositis. Additionally, he had swelling in the right kneecap. His treatment consisted of a rib belt and medication for pain, including a Cortisone derivitive. Freeman was of the opinion that Courtade could return to his routine work activities on May 17, but that he would have residual pain from the rib injury for some time. We do not feel that the award of $2,000.00 in general damages to Courtade was an abuse of discretion.
X-rays were taken after the accident of Orillion’s skull, left hand, and right knee. The diagnosis was contusion to the hand and knee, and mild concussion. He was hospitalized for three days for observation, but nothing significant developed regarding the concussion. On May 5, his left hand was x-rayed again because of continued swelling and at that time it was immobilized with a cast. The cast was removed on June 7, and Freeman was of the opinion that there may have been a fracture of the nervicular bone. The radiologist disagreed and felt there was no fracture; however, Dr. Freeman treated it as a fracture. Oril-lion continued to have pain after his discharge and sought the services of Dr. Lawrence J. Messina, an orthopedic surgeon, on July 18,1978. Dr. Messina found a deformity at the base of the left index finger at the wrist joint which he diagnosed as a dislocation. Dr. Messina hospitalized Oril-lion on July 24 and performed an open reduction, repaired the dislocation with wires and pins, and immobilized the hand again. On September 5, the pins were removed and by October 10 Orillion had full motion. Dr. Messina was of the opinion that he could return to work with very minimal disability; however, he acknowledged that Orillion might be more susceptible to arthritis.
We feel that Orillion established by a preponderance of the evidence that the problem Dr. Messina treated was causally related to his accident. Appellants offered no evidence to rebut Orillion’s version, which was certainly a reasonable one. The initial x-rays were ambiguous, so the injury was treated as a fracture by Dr. Freeman. The continued complaints were in the very same area of the hand, which caused problems and disabled Orillion. The trial judge was not clearly wrong in finding a causal connection between his continued complaints, which were treated finally and successfully by Dr. Messina, and the accident. Considering the six-month duration of the injury and Orillion’s disability during this period, we do not feel that the trial court abused its great discretion in its award of $6,000.00 in general damages.
For these reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.